**Daniel K. Le Roux**, OSB No. 085510
dan@unlawfultermination.com
**Andrew P. Freeman**, OSB No. 153364
andrew@unlawfultermination.com
Unlawful Termination Lawyers, LLC
1500 SW First Ave., Ste. 800
Portland, Oregon 97201
Tel (503) 243-4545
Fax (503) 243-4546
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JORGE BELLO,<br><br>          Plaintiff,<br><br>  v.<br><br>CITY OF PORTLAND; and JOHN OLIPHANT,<br><br>          Defendants. | Case No. 3:22-cv-00411-SI<br><br>**FIRST AMENDED COMPLAINT**<br><br>Violation of Civil Rights (43 U.S.C. Sec. 1983)<br><br>Supplemental Common Law Claims<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      Plaintiff Jorge Bello was protesting racially motivated police violence when he was subjected to excessive force by police officers working for the City of Portland after he questioned their activities and for his First Amended Complaint alleges as follows.

/ / /

Page | 1      **FIRST AMENDED** COMPLAINT & JURY TRIAL DEMAND

## JURISDICTION, VENUE AND PARTIES

2.      Defendant the City of Portland ("PORTLAND") is a municipality created under the laws of the State of Oregon. All material events set forth herein took place in the City of Portland, County of Multnomah. PORTLAND is a "person" pursuant to 42 U.S.C. Sec. 1983.

3.      Defendant John Oliphant ("OLIPHANT") was at all material times a police officer working for PORTLAND.  Plaintiff is informed and believes that OLIPHANT is a resident of the State of Oregon.

4.      Plaintiff is currently unaware of the exact identities and roles of the officers other than OPLIPHANT that were involved in this matter but is informed and believes that they work for PORTLAND as part of the Rapid Response Team ("RRT") or were otherwise employed by PORTLAND as police officers. Plaintiff believes that the following officers were or may have been involved in addressing the protests on August 24, 2020, out of which his complaint arises, including, but not limited to: Tyler Brunell, Justin Damerville, Erik Krammer, Jeffrey McDaniel, Amy Youngburg, Trevor Middleton, Lt. F. Schoening, Nathaniel Jones, Heather Martley, Quyen Doung, Bryan Anderson, Jeffrey Haagenson, Sean Scott, Todd Trapp, Zachary Domka, Nicholas Bianchini, Trevor Middleton, Shaye Samora, John Bartlett, Ryan Potter, Ken Le, Amelia Flohr, Brent Taylor, Nathan Banfi, Brian Wheeler, Joshua Dyk, Kyle Green, Kyle Dooley, Christopher Sathoff, John Young, Jade Lowry, and Detective B. Mcintyre. Plaintiff reserves the right to amend this complaint and to add additional officers as defendants in this matter when their identities and exact roles in the matter become available through discovery, if necessary.

5.       At all material times Plaintiff was and is a resident of the State of Oregon, County of Multnomah.

6.      This case was removed from Multnomah County Circuit Court by Defendants on

March 14, 2022, pursuant to 28 U.S.C. § 1441 because this Court has original jurisdiction over

this action pursuant to 28 U.S.C. §§ 1331 and 1343.

7.      Venue is proper with the District of Oregon, Portland Division, pursuant to

28 U.S.C. § 1391(b)(2), Local Rule 3.2(a)(1), because all or substantially all of Plaintiff's claims

arose in this judicial district in Multnomah County.

## STATEMENT OF FACTS

8.      On or about August 24, 2020, at about 10:00 p.m., Plaintiff was peacefully

protesting against racially motivated police violence in North Portland near the intersection of

N Lombard & N Fenwick Ave. when a group of police officers from PORTLAND believed to be

a part of the RRT, including Defendant OLIPHANT, engaged the protesters. Members of the

RRT began using force against one of the protestors in Plaintiff's presence.

9.      Plaintiff asked an officer with the number "31" on his helmet, who Plaintiff is

informed and believes was Defendant OLIPHANT, why the police were arresting protestors,

thereby exercising Plaintiff's First Amended Right to question government action. Plaintiff

received no response. Instead, OLIPHANT put his hand out with his index finger pointed

towards Plaintiff, and then shoved his finger into Plaintiff's torso, pushed Plaintiff's hand down,

and then grabbed the fabric of Plaintiff's clothing. Plaintiff put his hands up and backed away

from OLIPHANT. OLIPHANT then pursued Plaintiff and smacked the mask Plaintiff was

wearing for protection from Covid and tear gas exposure off his face. OLIPHANT then grabbed

Plaintiff's head/neck and pushed Plaintiff towards the ground. OLIPHANT was motivated to

silence Plaintiff for Plaintiff questioning police action and to deter him from further questioning

and/or protesting police action.

10.    OLIPHANT did not provide Plaintiff with a warning or any command prior to using force on Plaintiff. OLIPHANT has admitted that he initiated the assault on Plaintiff without any attempt being made to place Plaintiff under arrest without the use of force.

11.    At this point, several other officers rushed over and grabbed onto Plaintiff, including an officer with blue tape over the number ("Officer Blue Tape") on his or her helmet, an officer with a "6" or "8" ("Officer 6/8") on his or her helmet, and an officer with a "74" ("Officer 74") on his or her helmet. Plaintiff is currently unaware of the identities of these officers but is informed and believes that they work for PORTLAND as part of the RRT or were otherwise employed by PORTLAND as police officers. Plaintiff reserves the right to amend this complaint and to add these additional officers as defendants in this matter when their identities become available through discovery, if necessary.

12.     As the officers forced Plaintiff to the ground, Officer 6/8 grabbed Plaintiff's head while ripping off Plaintiff's helmet. Then Officer 74 ripped off Plaintiff's mask as Officer Blue Tape forced Plaintiff down on the concrete. Plaintiff felt dazed and disoriented by the officers' repeated contact with his head and neck area and how he was forced to the ground. Plaintiff is informed and believes that Officer 74 may have used his or her baton on Plaintiff while forcing him to the ground.

13.    As Plaintiff lay on the concrete in a fetal position, Officer 74 held Plaintiff down using his or her baton. Plaintiff pleaded with the officers that he was not resisting and asked why they were attacking him while Officer 74, Officer Blue Tape, and Officer 6/8 proceeded to zip tie Plaintiff's wrists. Around this point, Plaintiff lost consciousness. Officer Blue Tape and Officer

6/8 picked up Plaintiff, who was visibly limp.

14.      As Plaintiff went in and out of consciousness with his head visibly limp, other PORTLAND officers attempted to interrogate him. Plaintiff was never informed of his *Miranda* rights prior to the custodial interrogation. One of the PORTLAND officers drove his or her knuckles into the center of Plaintiff's chest, causing him pain. Plaintiff is currently unaware of the identities of these officers but is informed and believes that they work for PORTLAND as part of the RRT or were otherwise employed by PORTLAND as police officers. Plaintiff reserves the right to amend this complaint and to add these additional officers as defendants in this matter when their identities become available through discovery, if necessary.

15.      Afterwards, two officers picked up Plaintiff and loaded him into a police van. The officers threw Plaintiff headfirst into the police van, even though his hands were zip-tied and he could not brace his landing. Plaintiff's body bumped a fire extinguisher that was located in the back of the police van. Plaintiff believes the fire extinguisher may have partially discharged after he bumped against it, and he heard the officers audibly laughing about the incident. The officers attempted to take Plaintiff into custody despite his need for medical attention. Plaintiff is currently unaware of the identities of these officers but is informed and believes that they work for PORTLAND as part of the RRT or were otherwise employed by PORTLAND as police officers. Plaintiff reserves the right to amend this complaint and to add these additional officers as defendants in this matter when their identities become available through discovery, if necessary.

16.      An ambulance subsequently arrived on scene and Plaintiff is informed and believes that the ambulance workers insisted that Plaintiff be permitted to seek medical attention

for his injuries. The officers reluctantly allowed Plaintiff to be taken by ambulance for medical treatment. However, the officers did not return Plaintiff's cell phone from the police van to Plaintiff and the phone remained in police custody despite the fact that Plaintiff was never formally arrested or charged with any crime.

17.     Thereafter, Plaintiff sought medical treatment for his injuries. Plaintiff suffered a concussion and contusions to his head/neck/shoulders that resulted from the unreasonable excessive force he was subjected to by the PORTLAND police officers, including OLIPHANT. Plaintiff also suffered from back pain, chest pain, and emotional distress, as a result of the excessive force he was subjected to by the PORTLAND police officers, including OLIPHANT.

18.     Thereafter, Plaintiff's cellular phone was held for over a month by PORTLAND despite requests to the PORTLAND Police Department that the phone be returned to him. PORTLAND Police vaguely claimed that they needed to receive permission from unknown individuals at PORTLAND Police to release the phone, thereby depriving Plaintiff of use of his phone for approximately six weeks. When the phone was finally returned to PLAINTIFF, the screen was cracked and the phone was basically unusable.

19.     Plaintiff is informed and believes that the PORTLAND Police Department, and especially the officers of the RRT, has a policy, custom, and/or pattern and practice of using unreasonable excessive force on protestors protesting racially motivated police violence and has repeatedly failed to address the issue or take appropriate corrective action. For example, it has been found that during the Black Lives Matter protests between May 29, 2020, and November 15, 2020, PORTLAND Police officers used force more than 6,000 times. (*See United States of America v. City of Portland*, 3:12-CV-002265 (D. Or. 2020)).

**FIRST AMENDED** COMPLAINT & JURY TRIAL DEMAND

20.     Plaintiff is informed and believes that PORTLAND utilized materials in training that advocated silencing those who opposed police violence with force. Plaintiff is informed and believes that some of the content of these training materials were obtained from far-right organizations that held opposing viewpoints to those protesting.

21.     Plaintiff is further informed and believes that PORTLAND gathered information on those persons, including Plaintiff, opposing racially motived police violence not for the purpose of investigating potential crimes, but for the purpose of identifying and silencing those that opposed such violence by protesting in violation of their First Amendment rights. Plaintiff is informed and believes he was questioned and detained by PORTLAND without being placed under arrest in order to obtain information on protestors. Plaintiff is also informed and believes that his cell phone was seized and held in order to obtain information on protestors. Plaintiff is informed and believes that the information was used to create a database of persons protesting racially motivated police violence in order to identify them and deter them from exercising their First Amendment rights to question government action and protest government action.

22.     The statute of limitations for the claims in this matter are subject to the extension provisions of *Oregon House Bill* 4212, *Oregon Executive Order* No. 20-30, *Oregon Executive Order* 20-38, *Oregon Executive Order* No. 20-59, *Oregon Executive Order* No. 20-67, and *Oregon Executive Order* No. 21-05.

## DAMAGES

23.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered noneconomic damages, including pain and suffering, and emotional distress and requests an award of compensatory damages in an amount to be determined by a jury at the time of trial.

24.    As a direct and proximate result of Defendants' actions, Plaintiff has also suffered and continues to suffer economic damages, including, medical expenses, lost income opportunities, and requests an award of economic damages in an amount to be determined by a jury at the time of trial.

25.    Plaintiff also seeks equitable relief, including appropriate injunctive relief, as deemed appropriate by the Court.

26.    Based on the foregoing, Defendants acted with malice towards Plaintiff and/or an outrageous indifference to a highly unreasonable risk of harm and/or acted with a conscious indifference to the health, safety, and/or rights of others, including Plaintiff; therefore, Plaintiff seeks an award of punitive damages against Defendants, in an amount to be determined by the jury at the time of trial to the fullest extent permitted by law with respect to his claims under 42 U.S.C. Sec. 1983.

27.    Plaintiff also seeks reasonable attorney's fees and costs in an amount to be proven at trial pursuant to 42 U.S.C. Sec. 1988 and/or as otherwise allowed by law.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
Fourth Amendment Violation—Excessive Force (42 U.S.C. Sec. 1983)
(Against Defendant OLIPHANT)

28.    Plaintiff restates and incorporates by reference paragraphs 1-22, inclusive.

29.    At all material times, Plaintiff had a protected liberty interest under the Fourth and Fourteenth Amendments of the United States Constitution not to be subjected to an unreasonable seizure of his person through the application of undue, unnecessary, and excessive force.

30.    In Defendant OLIPHANT's decision making and use and application of force

against Plaintiff, Defendant OPLIPHANT failed to ascertain or ignored all reasonable and objective facts and his acts and omissions were objectively unreasonable in light of the circumstances confronting him for reasons which, based on information presently known to Plaintiff, include the following:

• OLIPHANT lacked knowledge of facts sufficient to form an objectively reasonable belief that Plaintiff posed an immediate threat of bodily harm to any person;

• OLIPHANT lacked knowledge of facts sufficient to form an objectively reasonable belief that Plaintiff had committed or was about to commit a crime;

• OLIPHANT intentionally used and applied force that was capable of causing Plaintiff serious injury;

• OLIPHANT intentionally used an applied quantum of force that was grossly disproportionate to Plaintiff's mere presence among protesters, journalists, and/or bystanders;

• OLIPHANT gave no warning of his intention to use force, even though it was reasonable for him to give such warning;

31.    OLIPHANT assaulted and seized Plaintiff through the application of force and such use of force was unreasonable, unnecessary, and excessive and violated Plaintiff's rights under the Fourth Amendment.

32.    At all material times, the law established that OLIPHANT's use of force in the manner and under the circumstances used against Plaintiff was objectively unreasonable and excessive. Any reasonable law enforcement officer would have known that the force Defendant OLIPHANT used against Plaintiff was unreasonably excessive and violated Plaintiff's right to be protected from unreasonable seizure of his person under the Fourth Amendment.

33.     Plaintiff requests an award of damages, equitable relief, costs, and attorney's fees under 42 U.S.C. Sec. 1988, as alleged in paragraphs 23-27, supra.

## SECOND CLAIM FOR RELIEF

Fourth Amendment Violation—Unconstitutional Policy, Custom, or Practice—*Monell*
(42 U.S.C. Sec. 1983)
(Against Defendant PORTLAND)

34.     Plaintiff restates and incorporates by reference paragraphs 1-22, inclusive.

35.     At all material times, Plaintiff had a protected liberty interest under the Fourth and Fourteenth Amendments not to be subjected to an unreasonable seizure of his person through the application of undue, unnecessary, and excessive force. Defendants violated Plaintiff's rights as described more fully above.

36.     PORTLAND has a custom, practice, and/or unofficial policy of the following:

• Allowing and/or encouraging police officers to use excessive, unreasonable force against persons protesting racially motivated police violence;

• Allowing police officers to use excessive, unreasonable force against persons more broadly;

• Failing to comply with court orders restricting the use of force against persons protesting racially motivated police violence; and

• Failing to effectively discipline officers that have used excessive, unreasonable force against persons protesting racially motivated police violence.

37.     These customs, practices, or unofficial policies were the motivating factors that resulted in the unconstitutional, excessive, and unreasonable use of force against Plaintiff. As a direct and proximate result of these constitutional violations, Plaintiff was placed in fear of his personal safety and suffered physical injury, pain and suffering, humiliation, emotional distress,

and economic loss.

38.    Plaintiff requests an award of damages, equitable relief, costs, and attorney's fees under 42 U.S.C. Sec. 1988, as alleged in paragraphs 23-27, supra.

### THIRD CLAIM FOR RELIEF
Assault and Battery
(Against Defendant PORTLAND; Alternatively, OLIPHANT)

39.    Plaintiff restates and incorporates by reference paragraphs 1-22, inclusive.

40.    Notice of this claim was properly given to PORTLAND within 180 days of this incident pursuant to ORS 30.275, or otherwise within the time period required by law.

41.    Defendant OLIPHANT, acting on behalf of PORTLAND, intentionally caused Plaintiff reasonable and imminent apprehension of harmful and/or offensive contact with Plaintiff's body to which he did not consent.  OLIPHANT then did, in fact, engage in intentional harmful and/or offensive contact with Plaintiff's body, as described above, including, initiating an assault on Plaintiff and grabbing Plaintiff without his consent.

42.    OLIPHANT's actions were not justified or provoked and were taken with the intent to harm and/or cause offense to Plaintiff.

43.    OLIPHANT's actions occurred in the course and scope of his employment with Defendant PORLTAND, were not justified or provoked and were taken with the intent to harm and/or cause offense to Plaintiff. OLIPHANT used physical contact of a violent and/or offensive nature as part of a policy, custom, and/or pattern and practice of behavior at PORTLAND, therefore, PORTLAND is liable for OPLIPHANT's conduct.

44.    In the alternative, if at the time of trial the trier of fact determines that OLIPHANT was acting outside the course and scope of his employment with PORTLAND,

motivated by his own interests, then OLIPHANT is individually liable for his own conduct.

45.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages as described more fully above.

46.    Plaintiff also requests an award of damages, equitable relief, and costs as alleged in paragraphs 23, 24, 25, and 27, inclusive, supra.

### FOURTH CLAIM FOR RELIEF
Negligence
(Against Defendant PORTLAND)

47.    Plaintiff restates and incorporates by reference paragraphs 1-22, inclusive.

48.    Notice of this claim was properly given to PORTLAND within 180 days of this incident pursuant to ORS 30.275, or otherwise within the time period required by law.

49.    Defendant OLIPHANT and other officers were PORTLAND police officers acting within the course and scope of their employment with PORTLAND when Plaintiff was attacked and injured by them.

50.    Defendants negligently violated the following Portland Police Bureau Use of Force Directives and/or the standard of reasonable care at the time OLIPHANT and other officers attacked Plaintiff, including the following:

• PPB Directive 1010.00 § 5.1 by using force that was objectively unreasonable under the totality of the circumstances;

• PPB Directive 1010.00 § 5.1.1 by using force when Plaintiff posed no immediate threat to the safety of officers or others;

• PPB Directive 1010.00 § 5.1.3 by using force when Plaintiff was neither actively resisting control nor attempting to evade;

• PPB Directive 1010.00 § 3.1 by failing to issue any warning prior to using force against Plaintiff; and

• PPB Directive 1010.00 § 1.1.1 by failing to employ any de-escalation techniques to avoid a physical confrontation.

51.     Plaintiff's injuries were caused by the negligence of PORTLAND in one or more of the following particulars:

A.  In having a policy and/or custom and/or practice of encouraging and/or ratifying and approving unreasonable use of force on citizens protesting racial violence by the police without implementing methods and training necessary to prevent such unreasonable use of force.

B.  In failing to properly train officers in the proper and legal use of reasonable force.

C.  In failing to properly supervise officers, including OLIPHANT, on the night excessive unreasonable force was used against Plaintiff.

D. In failing to enforce its own directives regarding the use of force.

E. In failing to properly discipline officers who violate its use of force directives.

52.     As a reasonably foreseeable, direct and proximate result of Defendant's conduct, Plaintiff suffered damages, as described more fully above.

53.     Plaintiff also requests an award of damages, equitable relief, and costs as alleged in paragraphs 23, 24, 25, and 27, inclusive, supra.

### FIFTH CLAIM FOR RELIEF
Trespass to Chattels/Property Damage
(Against Defendant PORTLAND)

54.     Plaintiff restates and incorporates by reference paragraphs 1-22, inclusive.

55.     Notice of this claim was properly given to PORTLAND within 180 days of this
incident pursuant to ORS 30.275, or otherwise within the time period required by law.

56.     Defendant PORTLAND intentionally exercised dominion and/or control over
Plaintiff's chattel to wit: his cell phone and contents thereof.

57.     Defendant's intentional exercise of dominion and/or control over
Plaintiff's chattels seriously interfered with Plaintiff's right of control over the chattel. Defendant
remained in control of the chattel and refused to return it to Plaintiff for a period of
approximately six weeks thereby depriving him of its use.

58.     When Defendants finally returned the chattel, it was damaged to the point it was
no longer usable.

59.     Plaintiff requests damages for loss of use of the chattel and/or it's destruction.
Plaintiff hereby demands damages for the value of the chattel with damages for loss of use in an
amount to be determined at the time of trial.

### SIXTH CLAIM FOR RELIEF
First Amendment Violation—Viewpoint Discrimination (42 U.S.C. Sec. 1983)
(Against Defendant OLIPHANT)

60.     Plaintiff restates and incorporates by reference paragraphs 1-22, inclusive.

61.     At all material times, Plaintiff had a protected liberty interest under the First and
Fourteenth Amendments of the United States Constitution to demonstrate against racially
motivated police violence free of coercion by the government.

62.     At all material times, Plaintiff was engaged in First Amendment protected acts of
free speech, including publicly demonstrating in opposition to racially motivated police violence.

63.     Defendant OLIPHANT's use of force against Plaintiff in response to his
questioning of police actions and protesting police actions was designed to silence and deter

Plaintiff from engaging in such protected speech and expression.

64.    OLIPHANT's use of force against Plaintiff in response to the questioning of police use of force against protestors chilled Plaintiff from continuing to engage in protected First Amendment activity and effectively deterred him from engaging in such protected activity. A reasonable person in Plaintiff's position would have been deterred from continuing to engage in protected First Amendment activity by OLIPHANT's and other officers use of force against Plaintiff.

65.    Plaintiff suffered damages as a result of Defendant's conduct and requests an award of damages, equitable relief, costs, and attorney's fees under 42 U.S.C. Sec. 1988, as alleged in paragraphs 23-27, inclusive, supra.

### SEVENTH CLAIM FOR RELIEF
First Amendment Violation—Unconstitutional Policy, Custom, or Practice—*Monell*
(42 U.S.C. Sec. 1983)
(Against Defendant PORTLAND)

66.    Plaintiff restates and incorporates by reference paragraphs 1-22, inclusive.

67.    At all material times, Plaintiff had a protected liberty interest under the First and Fourteenth Amendments of the United States Constitution to question government action and demonstrate against racially motivated police violence free of coercion by the government.

68.    PORTLAND has a custom, practice, and/or unofficial policy of using force against persons protesting racially motivated police violence in order to silence and deter those persons, including Plaintiff, from exercising their First Amendment rights to question government action and protest against government action.

69.    These customs, practices, or unofficial policies were the motivating factors that resulted in the unconstitutional use of force against Plaintiff to silence him and deter him from

exercising his rights under the First Amendment to question government action and protest against government action, including racially motivated police violence. As a direct and proximate result of these constitutional violations, Plaintiff was silenced and deterred from exercising these First Amendment rights and suffered physical injury, pain and suffering, humiliation, emotional distress, and economic loss as a result.

70.    PORTLAND has a custom, practice, and/or unofficial policy of collecting information on persons, including Plaintiff, exercising their First Amendment rights to question the government and protest against racially motivated police violence. Plaintiff is informed and believes that the collection of information was not for the purpose of investigating possible criminal activity but to amass a database on those persons exercising their First Amendment rights by protesting against racially motivated police violence. This collection of information on those persons, including Plaintiff, exercising their First Amendment rights by protesting against racially motivated police violence was to be used to deter and silence such persons.

71.    Plaintiff was detained by PORTLAND, questioned without being placed under arrest and without being given any warning of his *Miranda* rights. Plaintiff is informed and believes that the purpose of his detention and questioning was to collect information on those persons exercising their First Amendment rights by protesting against racially motivated police violence. PORTLAND also seized Plaintiff's cell phone and Plaintiff is informed and believes that information may have been taken from his cell phone for the purpose of collecting information on persons exercising their First Amendment rights by protesting against racially motivated police violence. Plaintiff is informed and believes that the information collected was used by PORTLAND to create a database of those protesting racially motivated police violence

in order to silence and deter them from exercising their First Amendment rights to question government action and protest against government action.

72.    Plaintiff suffered damages as a result of Defendant's conduct and requests an award of damages, equitable relief, costs, and attorney's fees under 42 U.S.C. Sec. 1988, as alleged in paragraphs 23-27, supra.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all claims and issues to the extent allowed under the law.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests the following judgments and relief according to proof:

1.    Economic damages, as alleged;

2.    Noneconomic damages, as alleged;

3.    Reasonable costs and attorney's fees per statute, as alleged;

4.    For equitable relief, including injunctive relief, as determined by the Court, as alleged;

5.    For prejudgment and post-judgment interest as appropriate and allowed by law;

6.    Punitive damages, as alleged; and

7.    All such other relief as this Court may deem proper.


Dated: April 11, 2022.                    **Unlawful Termination Lawyers, LLC**


                                          *s/Daniel K. Le Roux*
                                          Daniel K. Le Roux, OSB No. 085510
                                          dan@unlawfultermination.com
                                          Andrew P. Freeman, OSB No. 153364
                                          andrew@unlawfultermination.com
                                          Tel. 503-243-4545
                                          *Attorneys for Plaintiff*

## <u>DECLARATION OF SERVICE</u>
*Bello v. City of Portland, et al.*
USDC District of Oregon, Case No. 3:22-cv-00411-SI

I hereby certify that I served Plaintiff's First Amended Complaint on the following parties:

Daniel Simon
Deputy City Attorney
dan.simon@portlandoregon.gov
1221 SW 4th Ave., Ste. 430
Portland, OR 97204
FAX: 503-823-3089
*Attorneys for Defendants*

       by causing a full, true, and correct copy thereof, addressed to the last-known address of the attorney of record, party or parties, sent by the following indicated method on the date set forth below:

X      By **Email**

☐     By **mailing** in a sealed, first-class postage envelope and deposited with the United States Postal Service at Portland, Oregon.

X      By **ECF/NEF**

DATE: April 11, 2022

                         *s/Daniel K. Le Roux*
                         Daniel K. Le Roux, OSB No. 085510
                         *Attorney for Plaintiff*

Page 1 – CERTIFICATE OF SERVICE